# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

CESAR MARIO ROCA                                    CIVIL ACTION

VERSUS                                              NO.  06-3424

BURL CAIN, WARDEN                                   SECTION "J"(6)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct

hearings, including an evidentiary hearing if necessary, and to submit proposed findings and

recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as

applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire

record, the Court has determined that a federal evidentiary hearing is unnecessary.  *See* 28

U.S.C. § 2254(e)(2).[1]  For the following reasons, it is recommended that the instant petition

for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The petitioner, Cesar Mario Roca ("Roca"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 3, 2001, Roca was indicted by a grand jury in Jefferson Parish and charged with the following four counts: Count One, aggravated rape of D.R.; Count Two, aggravated rape of a known juvenile, E.B., under the age of 12 years; Count Three, aggravated oral sexual battery upon a known juvenile. E.B., under the age of 12 years; and Count Four, molestation of a juvenile upon a known juvenile, E.B., by committing lewd and lascivious acts upon the juvenile by use of influence by virtue of a position of control or supervision over the juvenile.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> E.B.[4] was fifteen years old at the time of trial and was born on December 28, 1986 in Sonora, Mexico but later moved to San Diego, California when she was two years old.  E.B. first met defendant when she was five years old after defendant and her mother developed a relationship while in San Diego.  Later E.B. and her mother moved with defendant from San Diego to Kenner, Louisiana. At that time, E.B. thought of defendant as a father and referred to him as "papa." After moving to Kenner, E.B.'s mother worked various housekeeping jobs and, as a result, a babysitter took care of her.  After a period of time, defendant undertook the responsibility of caring for E.B. while her mother was working because he worked at the same building in which they lived.
>
> E.B. stated that her relationship with defendant was initially good but that it later changed.  When she was six or seven years old, she recalled an incident when she watched television in defendant's room and played "horsey" with him. When E.B. fell off of defendant's back, defendant exposed his penis and told her, "Don't be scared.  I'm going to teach you."  She got scared and ran out of the

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Indictment, 5/3/01; Grand Jury Return, 5/3/01.

[4]"In accordance with LSA-R.S. 46:1844(W)(1), to protect the identity of the victims, they will be referred to by their initials, E.B. and D.R. Additionally, E.B.'s mother shall be referred to as C.B."

room.  Shortly after that incident, defendant began touching her vagina and chest on numerous occasions.  Defendant inserted his fingers into her vagina initially not using lubricant but later put something from a glass jar on his fingers.  She recalled experiencing a small amount of vaginal bleeding and pain when she urinated.  E.B. stated that defendant made her touch his penis with her hand and mouth on several occasions.

E.B. also said that, when she was eight or nine years of age, defendant for the first time put his penis inside of her vagina.  E.B. remembered on another occasion while watching television that defendant came into the room and told her he was "going to teach her about it."  Defendant proceeded to take off her clothes and put his penis inside her vagina.  E.B. stated that it hurt very badly and that she was crying.  Defendant told her that she should not cry because the neighbors might hear her.  Defendant also told her that she should not tell anyone about what happened because no one would believe her and that everyone would leave her.  E.B. related defendant continued to have sexual intercourse with her until she was thirteen years old.  During that period of time, defendant would have sex with her in both the house and in his office.  When having sex with her in the office, defendant would put a closed sign in the window to prevent people from entering.  E.B. noted that defendant told her that having sex with him would teach her a lot about life and that it was her duty to obey him.

She also recounted one occasion when after she and defendant watched a show about animals on television, defendant wanted to show her how animals did it on the back.  He then took off her pants and put his penis in her "butt."  E.B. testified that it hurt very badly.

Upon taking sex education in school and learning about incest, E.B. felt bad about herself.  That same day, she went home and began defacing photographs of herself because she felt so dirty.  Defendant discovered what she did to the photographs and was very angry.  Later that evening, defendant came into her room and asked her if she was going to do her duties she responded "no."  E.B. testified that she began to cry and later that evening told her mother what defendant did to her.

A few days after telling her mother, E.B. and her mother flew to California to stay with an aunt.  While there, E.B. was examined by a gynecologist whom she told about the continuous molestation.  E.B. also told police officers in California and eventually Detective Larry Dyess of the Jefferson Parish Sheriff's Office what defendant did to her.

Defendant's daughter, Gisela Chevalier, stated that she was originally born in Havana, Cuba and that she did not meet her father until she was thirty years old.  She came to the United States after her father filed a petition with the United States government to have her brought to the country as a child of a U.S. citizen.  Upon arriving in the United States, she lived with defendant, his wife, daughter, D.R., and youngest son, Robert Roca, at their Kenner home.  Chevalier related

that, prior to moving to the United States, she heard rumors of sexual misconduct involving defendant and D.R.   While living in the Kenner home, defendant addressed the rumors by stating that he had a consensual sexual relationship with D.R. when she was fourteen years old.   Shortly thereafter, Chevalier moved out of defendant's home without reporting the incident to police.   In the summer of 1992, defendant returned to Kenner with C.B. and E.B. and moved into an apartment across the street from her.   Chevalier stated that she developed a close relationship with C.B. and E.B. but in 1994 lost contact with them due to a business dispute with her father.   However, in February of 2001 C.B. asked her to contact the Jefferson Parish Sheriff's Office concerning the allegations against defendant.   Chevalier subsequently spoke to Detective Larry Dyess and informed him that defendant told her he had a consensual sexual relationship with her half-sister, D.R.

Detective Larry Dyess of the Personal Violence Unit of the Jefferson Parish Sheriff's Office followed up an investigation conducted by detectives in California.   He interviewed E.B. and reviewed the California reports and obtained a warrant for defendant's arrest.   Defendant denied any inappropriate activity with E.B.   Detective Dyess was contacted by Chevalier who informed him of a second victim, D.R.   Detective Dyess met with D.R. who told him that she was sexually assaulted by defendant when she was a child.   Thereafter, Detective Dyess booked defendant on the additional charge.

(footnote in original) *State v. Roca*, 866 So.2d 867 (La. App. 5th Cir. 2004); State Record

Volume 6 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 03-KA-1076, pp. 2-5,

January 13, 2004.

On July 11, 2001, Roca filed a motion seeking to quash the first count of the

indictment.[5]   Roca urged that charge involving D.R. had prescribed under La. Code Crim.

P. arts. 571.1[6] and 572.[7]   Roca argued that the facts at trial would bear out that there had been

---

[5]St. Rec. Vol. 1 of 7, Motion to Quash, 7/11/01.

[6]Art. 571.1, at the time, set forth a ten year limitation period for certain sex offenses, not including aggravated rape, where the victim was under the age of 17 and dictated that the ten year period did not begin to run until the victim reached the age of 17.

[7]Art. 572, at the time, provided a six year limitation periods for felonies punishable by imprisonment at hard labor.

no aggravated rape because Roca was not armed at the time.   Counsel argued that, consequently, a non-aggravated rape charge should have been brought on or before October 6, 1990.  The motion also sought issuance of a subpoena to D.R. to inquire whether Roca had a gun when he raped her.  The State opposed the motion on the basis that the motion to quash could not be used to challenge the merits of the charge and that aggravated rape carried no limitations period pursuant to La. Code Crim. P. art. 571.[8]

At a hearing held on December 14, 2001, the state trial court denied Roca's motion finding that the aggravate rape charge was timely brought.[9]   The court also granted the State's motion to quash the subpoena finding that there was no basis to question D.R. prior to trial.  The Louisiana Fifth Circuit denied Roca's subsequent writ application finding no basis to disturb the trial court's ruling and no basis to subpoena D.R. to the motion hearing.[10]

On July 8, 2002, the state trial court denied Roca's motion to sever Count One, the aggravated rape of D.R., from the rest of the charges.[11]   Roca was thereafter tried before a jury on July 9, 10 and 11, 2002, and was found guilty as charged on all four counts.[12]

---

[8]St. Rec. Vol. 1 of 7, State's Opposition and Motion to Quash, 9/20/01.

[9]St. Rec. Vol. 2 of 7, Hearing Transcript, 12/14/01; *see also*, St. Rec. Vol. 1 of 7, State's Opposition and Motion to Quash, 9/20/01.

[10]St. Rec. Vol. 1 of 7, 5th Cir. Order, 01-K-1391, 2/28/02.

[11]St. Rec. Vol. 1 of 7, Hearing Minutes, 7/8/02; Motion to Sever, 12/14/01; St. Rec. Vol. 2 of 7, Hearing Transcript, 12/14/01.

[12]St. Rec. Vol. 1 of 7, Trial Minutes (2 pages), 7/9/02; Trial Minutes, 7/10/02; Trial Minutes, 7/11/02; Jury Verdict (Counts 1 and 2), 7/11/02; Jury Verdict (Counts 3 and 4), 7/11/02; St. Rec. Vol. 2 of 7, Trial Transcript, 7/9/02; Trial Transcript, 7/10/02; St. Rec. Vol. 3 of 7, Trial Transcript (continued), 7/10/02; St. Rec. Vol. 4 of 7, Trial Transcript, 7/11/02.

The state trial court later denied Roca's motion for new trial and, after waiver of delays, sentenced Roca to serve life imprisonment on Counts One and Two, each without benefit of parole, probation or suspension of sentence.[13]  The court sentenced Roca to serve 20 years as to Count Three, also without benefit of parole, probation or suspension of sentence.  The court also sentenced Roca to serve 15 years imprisonment on Count Four with the first five years of that sentence to be without benefit of parole, probation or suspension of sentence.  The court further ordered that the sentences for Counts Two, Three and Four run concurrently to each other, and consecutive to the life sentence imposed on Count One. The court also later denied Roca's motion to reconsider the sentences.[14]

On direct appeal, Roca's appointed counsel raised three grounds for relief:[15] (1) the state trial court erred in denying the defendant's motion to sever the improperly joined counts in the indictment; (2) the evidence was insufficient to support the verdict; and (3) the state trial court failed to rule on the defendant's motion to reconsider the sentence which has deprived him of the right to appeal the excessiveness of the sentence.

---

[13]St. Rec. Vol. 1 of 8, Sentencing Minutes, 8/6/02; Motion for New Trial, 8/6/02; St. Rec. Vol. 4 of 7, Sentencing Transcript, 8/6/02.

[14]St. Rec. Vol. 1 of 7, Hearing Minutes, 8/12/02; Motion to Reconsider Sentence, 8/6/02; St. Rec. Vol. 5 of 7, Hearing Transcript, 8/12/02.

[15]St. Rec. Vol. 4 of 7, Appeal Brief, 10/10/03; *State v. Roca*, 866 So.2d at 867; St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 03-KA-1076, 1/13/04.

6

On January 13, 2004, the Louisiana Fifth Circuit affirmed the conviction and sentence finding no merit to the claims raised.[16]  The court also held that, to the extent Roca raised an excessive sentence claim, the claim was not briefed and was deemed abandoned.  In its errors patent review, the court also concluded that the state trial court erred in informing Roca of the delays for seeking post-conviction relief and had failed to notify him in writing of the registration requirements for sex offenders.  The court also noted that the record did not contain an indication that the jury panel was sworn before trial and found that any such challenge also had been waived.

Roca timely[17] sought review of the appellate court's decision in the Louisiana Supreme Court.[18]  In addition to the three claims raised by counsel on direct appeal, Roca also argued that Count One of the indictment should have been dismissed under the statute of limitations and that the state trial court erred in denying the motion to sever.  The Louisiana Supreme Court denied the application without reasons on July 2, 2004.[19]

Roca's conviction became final 90 days later, September 30, 2004, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is

---

[16]*State v. Roca*, 866 So.2d at 867; St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 03-KA-1076, 1/13/04.

[17]Petitioner had 30 days from issuance of the appellate court's order to mail or file a writ application in the Louisiana Supreme Court.  La. S. Ct. Rule X§5; La. Code Crim. P. art.922.

[18]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 04-KO-0583, 3/8/04 (signed 2/12/04, postmarked 2/13/04); La. S. Ct. Letter, 2004-KO-583, 3/8/04.

[19]*State v. Roca*, 877 So.2d 143 (La. 2004); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2004-KO-0583, 7/2/04.

considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), *cert. denied*, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Over seven months later, on May 13, 2005, Roca filed *pro se* an application for post-conviction relief in the state trial court raising two grounds for relief: (1) ineffective assistance of trial counsel where counsel (a) failed to challenge a defect in the indictment, (b) failed to properly argue for severance of the charges, (c) failed to challenge the sufficiency of the evidence to support the indictment, (d) failed to request a *Daubert* hearing, (e) failed to object to numerous points of prosecutorial misconduct, (f) failed to object to the error patent found by the appellate court, and (g) failed to challenge the sufficiency of the evidence; and (2) ineffective assistance of appellate counsel where counsel (a) failed to provide him with a complete trial transcript, (b) failed to raise the error patent found by the appellate court, (c) failed to raise issues objected to at trial, (d) failed to raise prosecutorial misconduct at trial, (e) failed to raise insufficient evidence and the ineffective assistance of trial counsel.  The state trial court denied relief on May 18, 2005, finding no merit to the claims under the standards set for in *Strickland v. Washington*, 466 U.S. 668 (1984).

On May 19, 2005, the state trial court received and filed a motion from Roca to supplement his application for post conviction relief to include two additional claims:[20] (1) the charge related to D.R. was untimely brought under the statute of limitations in violation of *ex post facto laws* and the Supreme Court opinion in *Stogner v. California*, 539 U.S. 607

---

[20]St. Rec. Vol. 6 of 7, Motion to File Supplemental Brief, 5/19/05.

(2003); and (2) the state trial court abused its discretion in denying the motion to sever the charges for trial.  On May 24, 2005, the trial court denied the motion finding it to be repetitive in light of its prior dismissal of the original application for post-conviction relief.[21]

Roca sought review of both of the state trial court's rulings in the Louisiana Fifth Circuit.[22]  The court denied relief on July 1, 2005, finding no error in either of the rulings.[23]

On July 20, 2005, Roca submitted a writ application which was filed in the Louisiana Supreme Court on August 15, 2005.[24]  Roca raised therein by reference the claims raised in his "original application for post-conviction relief as well as his application for supervisory writ of review filed with the 24th Judicial District Court and the Fifth Circuit Court of Appeal."[25]  The Louisiana Supreme Court denied the application without reasons on May 5, 2006.[26]

---

[21]St. Rec. Vol. 6 of 7, Trial Court Order, 5/24/05.

[22]Petitioner had 30 days from issuance of the trial court's orders to file for timely review in the Louisiana Fifth Circuit. La. App. Rule 4-3; La. Code Crim. P. art. 922.  *See*, St. Rec. Vol. 6 of 7, 5th Cir. Order, 05-KH-661, 7/1/05.  The record does not contain a copy of the writ application.  However, the filing date of the writ application, June 28, 2005,  appears on the face of the court's subsequent order and has been confirmed with the office of the clerk of the Louisiana Fifth Circuit Court of Appeal.

[23]St. Rec. Vol. 6 of 7, 5th Cir. Order, 05-KH-661, 7/1/05.

[24]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 05-KH-2137, 8/15/05 (signed 7/20/05, postal metered 7/21/05); La. S. Ct. Letter, 2005-KH-2137, 8/15/05.

[25]*Id*., p. 2.

[26]*State ex rel. Roca v. State*, 927 So.2d 304 (La. 2006); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2005-KH-2137, 5/5/06.

II.     FEDERAL HABEAS PETITION

On June 29, 2006, Roca filed a petition for federal habeas corpus relief in this court raising four grounds for relief:[27] (1) the charge related to D.R. violated *ex post facto* laws and *Stogner v. California*, 539 U.S. at 607 due to the expiration of time limitations; (2) the state trial court erred in denying the defense motion to sever; (3) ineffective assistance of trial counsel where counsel (a) failed to properly argue for severance of the charges, (b) failed to challenge the sufficiency of the evidence to support the indictment, (c) failed to request a *Daubert* hearing, (d) failed to object to numerous points of prosecutorial misconduct, (e) failed to object to the error patent, that the jury was not sworn, which was found by the appellate court, and (f) failed to challenge the sufficiency of the evidence; and (4) ineffective assistance of appellate counsel where counsel (a) failed to provide him with a complete trial transcript, (b) failed to raise the error patent issue, that the jury was not sworn, which was found by the appellate court, (c) failed to raise issues objected to at trial, (d) failed to raise prosecutorial misconduct, (e) failed to challenge the sufficiency of the evidence and trial counsel's ineffective assistance.

The State filed an opposition in response to Roca's petition conceding timeliness of the filing and exhaustion of the claims. The State argues, however, that the first claim, regarding violation of *ex post facto* laws, is procedurally barred from federal review.[28] The

---

[27]Rec. Doc. No. 1, Memorandum in Support.

[28]Rec. Doc. No. 5.

State also argues that the remaining claims are without merit and that Roca is not entitled to habeas corpus relief.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[29] and applies to habeas petitions filed after that date.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA therefore applies to this petition, which, for reasons discussed below, is deemed filed in this federal court on June 7, 2006.[30]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir.

---

[29]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Roca's petition was filed by the clerk of court on June 29, 2006, when the filing fee was paid.  Roca signed the petition on June 7, 2006.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

1997) (citing 28 U.S.C. § 2254(b), (c)).  As noted above, the State conceded exhaustion of the claims and the timeliness of the petition.  The record supports these conclusions.  The State, however, also alleges that one of Roca's claims is in procedural default.  The Court will address this issue before proceeding to the merits of the remaining claims.

IV.   PROCEDURAL DEFAULT OF *EX POST FACTO* LAW CLAIM (CLAIM NO. 1)

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

12

In his first claim before this Court, Roca alleges the charge related to D.R. violated *ex post facto* laws and *Stogner*, 539 U.S. at 607 (hereafter "*ex post facto* law claim").  The record indicates that Roca first raised this claim in a proposed supplement to his 2005 application for post conviction relief.[31]  The state trial court denied the motion finding that it would be repetitive of the original application for post conviction relief which had already been denied.[32]  The Louisiana Fifth Circuit and the Louisiana Supreme Court denied Roca's subsequent writ applications without additional reasons.

Thus, in light of the last reasoned decision on this issue, the state trial court refused to consider and barred review of Roca's *ex post facto* law claim as repetitive.  Louisiana's rule against raising claims in a repetitive or successive application for post conviction relief is found in La. Code Crim. P. art. 930.4(E), which provides for dismissal of a successive post-conviction application that raises a new or different claim which should have been raised in a previous application.

A.    INDEPENDENT AND ADEQUATE

For the state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  *Amos*, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the

---

[31]St. Rec. Vol. 6 of 7, Motion to File Supplemental Brief, 5/19/05.

[32]St. Rec. Vol. 6 of 7, Trial Court Order, 5/24/05.

majority of similar cases. *Glover*, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*

In this case, the state trial court refused to consider the *ex post facto* law claim because the amended application was successive and repetitive, a prohibition set forth in La. Code Crim. P. art. 930.4(E). Thus, the last reasoned decision of the state courts barred review of these claims pursuant to a state procedural rule.

The bars to repetitive claims and successive petitions found in La. Code Crim. P. art 930.4 are clearly independent state law procedural bases for denying review of an inappropriately raised post-conviction claim. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); *Washington v. Cain*, 2000 WL 863980 (E.D. La. June 27, 2000) (Duplantier, J.) (same).

In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.1997). Roca has not met his burden to show that the state did not strictly or regularly follow this procedural rule. *See Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.1997). Therefore, the procedural bar pursuant to La. Code Crim. P. art. 930.4(E) is both independent and adequate to bar review of Roca's *ex post facto* law claim.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, under a broad reading, Roca claims that he raised the *ex post facto* law claim in a supplemental brief on direct appeal,[33] although the claim is not specifically addressed in the appellate decision. The State argues that the Louisiana Fifth Circuit has no record of the alleged supplemental brief.[34] The State is correct that there is nothing in the state appellate records to establish that Roca actually filed the purported supplemental brief.[35] Without some showing that the supplemental brief was filed and considered on its merits,

---

[33]Rec. Doc. No. 1, Memorandum in Support, p. 3; *see also*, St. Rec. Vol. 7 of 7, Letter from Roca, 11/7/03.

[34]Rec. Doc. No. 5.

[35]A member of the Court's staff contacted the office of the clerk of the Louisiana Fifth Circuit and confirmed that no such supplemental brief was filed or docketed.

15

Roca has not established that he actually raised the claim on direct appeal or that the state appellate court in some way contributed to or caused his procedural default.

The Court's review of the record does not support a finding that any factor external to the defense prevented Roca from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Roca's *ex post facto* law claim is therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[36]

---

[36]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. *Id.*

C.     FUNDAMENTAL MISCARRIAGE OF JUSTICE

Roca may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Roca does not present anything, and the record contains nothing, that suggests his actual innocence.  His claims address alleged procedural failings in the underlying criminal proceedings, not his actual innocence.  For these reasons, Roca has failed to overcome the procedural bar to his *ex post facto* law claim.  The claim is procedurally barred and must be dismissed with prejudice for that reason.

V.     STANDARDS OF MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000)), *aff'd in part, rev'd in part on  other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court

has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 405-06, 412-13 (2000);  *Penry*, 532 U.S. at 792-93;  *Hill*, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002), *cert. denied*, *sub nom*, *Neal v. Epps*, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   DENIAL OF THE MOTION TO SEVER (CLAIM NO. 2)

Roca claims that the state trial court abused its discretion when it denied the motion to sever Count One of the indictment, the aggravated rape of D.R., from the other three counts related the sexual abuse of E.B.  Roca claims that the joinder of the claims in the same indictment violated Louisiana law because the crimes were more than 20 years apart and involved different victims.  He also alleges that, in denying the motion to sever, the state trial

court failed to properly apply La. Code Ev. arts. 404(B) and 412.2(A) with regard to the State's notice of its intent to use other crimes evidence, i.e. in allowing presentation of evidence of the D.R. crimes in the same trial as the E.B. crimes without proper written notice.

The State argues that Roca is not entitled to habeas corpus relief because he argues only violation of state law and has failed to raise a constitutional issue.

As outlined above, Roca's counsel filed prior to trial a Motion to Sever Count One from the other counts.[37]  Roca argued that the alleged crime against D.R. charged in Count One was too old and remote to have been brought in the same indictment as the counts related to E.B.  He also argued that the unrelated evidence would confuse the jury and hindered Roca's ability to defend against each charged crime.  On July 8, 2002, the state trial court heard argument and denied the motion.[38]

Roca challenged the denial of the motion to sever on direct appeal to the Louisiana Fifth Circuit.  The court found that the state trial court did not abuse its discretion and denied the claim as meritless.  The court held that the charges were appropriately related under Louisiana law because they arose from similar circumstances and were developed during a common investigation.  The court also determined that the evidence of the D.R. crime would have been admissible other crimes evidence under the Louisiana Code of Evidence in the

---

[37]St. Rec. Vol. 1 of 7, Motion to Sever, 12/14/01.

[38]St. Rec. Vol. 1 of 7, Hearing Minutes, 7/8/02; St. Rec. Vol. 2 of 7, Hearing Transcript, 7/8/02.

trial of the E.B. crimes, and vice versa.  This was the last reasoned decision on the merits of

this issue.[39]  *See Ylst*, 501 U.S. at 802.

As noted above, Roca's claim is not presented in terms of federal law.  Instead, he

argues that the state trial court's actions violated state law and state evidentiary rules.[40]

Habeas corpus review is limited to questions of constitutional dimension.  To the extent he

alleges a possible misapplication of state law, though the Court finds none, this would not

constitute an independent basis for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62,

67 (1991).  Federal courts also do not review the admissibility of evidence under state law.

*Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992); *Burgett v. State of Texas*, 389 U.S.

109 (1967).  Instead, federal courts will not review the state courts' application of state law

unless the proceedings violate due process such that the violation renders the criminal

proceeding fundamentally unfair.  *Lisenba v. People of the State of California*, 314 U.S. 219,

236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper

---

[39]The Court notes that Roca raised this claim again in the proposed Supplemental Application for Post-Conviction Relief submitted to the state trial court on May 19, 2005.  The motion was denied as a repetitive because the original application for post-conviction relief had already been denied.  Because the state courts had already ruled on the merits, the court need not address the later imposed procedural bar when the claim was asserted on post-conviction review.  When a claim is barred as repetitive under the provisions of La. Code Crim. P. art. 930.4, the presumption in the rule is that the claims were not new or different from something previously addressed or were already addressed and not entitled to additional review.  *Accord Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) (discussing a similar provision in La. Code Crim. P. art. 930.4(A), which prevents repetitive review of a claim raised on appeal).  This court must therefore look back to the underlying basis for the original denial of relief to determine whether the claim is appropriate for federal habeas relief.

[40]Rec. Doc. No. 1, Memorandum In Support, pp. 11-13.

only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)  Such is not the case here.

The question of whether a petitioner's due process rights were violated is a question of law.  *Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008).  This court must determine if the state court's decision was contrary to, or involved an unreasonable application of, Supreme Court precedent.

To assess whether Roca received due process, the Court will consider the parameters under which the charges were joined against him.  Louisiana law provides for the joinder of criminal acts in one bill of information or indictment under the following circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 also permits joinder where "offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."  However, La. Code Crim. P. 495.1, provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of

offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

In this case, Roca has not shown that the joinder of the crimes in his indictment was inappropriate or prejudicial in violation of his due process rights, or state law for that matter. Roca alleges that the presentation of the evidence of the 20 year old crimes amounted to impermissible other crimes evidence with respect to the other counts and served only to confuse and prejudice the jury, rendering the joinder of the claims impermissible. However, the trial record reflects that the State presented the evidence related to each victim in a clear and systematic manner and Roca was able to challenge each witness and set of facts accordingly.

For example, the State first presented the testimony and evidence related to the three counts involving E.B.[41] After telling the jury she was born on December 28, 1986, E.B. testified about the details of the incidents and rapes which began when she was six or seven years old.[42] Following this, the State presented the testimony of Roca's other daughter, Gisela Chavalier. Through her testimony, the State provided the jury with a time-line of family events between the early 1980's and 2001, with specific reference to the periods of

---

[41]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 7-42, 7/10/02.

[42]*Id.*, pp. 7, 15.

abuse to D.R. and to E.B.[43]  The time-line of family events was repeated and expounded upon in Roca's own testimony.[44]

Chevalier also explained how she assisted the mother, C.B., in reporting the abuse of the daughter, E.B., in 2000 to the Jefferson Parish Sheriff's Office and voluntarily reported the prior abuse of D.R..[45]  D.R. also testified that she was born on October 7, 1963.[46]  She testified about the multiple sex encounters she had with her father between the ages of 14 or 15 and 16 or 17.[47]  At each stage of the questioning, Roca's counsel was able to cross-examine the witnesses and focus on the particular facts of the individual crimes to which they attested.

A thorough reading of the trial transcript confirms the conclusion of the Louisiana Fifth Circuit that "the State presented its case in a logical fashion and in such a manner as to keep the evidence pertaining to each count and each victim separate and distinct."[48]  There is nothing in the record to indicate, and Roca has not demonstrated, that the joint prosecution of the charges or the presentation of the evidence hindered his defense or had a prejudicial impact on the jury's verdict in violation of Roca's due process rights.  The state courts'

---

[43]*Id.*, pp. 48-52, 60-61.

[44]St. Rec. Vol. 3 of 7, Trial Transcript (continued), p. 202-246, 7/10/02.  The Court notes that pages 155, 165, 254  and 258 are missing from the copy of this continued portion of the trial transcript.  This fact does not alter the Court's conclusions reached in this report.

[45]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 58-61, 7/10/02.

[46]St. Rec. Vol. 3 of 7, Trial Transcript (continued), p. 150, 7/10/02.

[47]*Id.*, pp. 156-167.

[48]*State v. Roca*, 866 So.2d at 873; St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 03-KA-1076, p. 10, 1/13/04.

denial of relief on this issue was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

VII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. THREE AND FOUR)

Roca alleges that his trial and appellate counsel gave ineffective assistance in the eleven instances outlined above and discussed hereafter.  Roca first raised these claims in his state application for post-conviction relief.  The state trial court denied relief on these claims under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The Court held that Roca's claims involved strategic choices by counsel which did not give rise to relief.[49]  This was the last reasoned state court decision on the issue.  *See Ylst*, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, Supreme Court precedent.

The standard for judging the performance of counsel was established by the Supreme Court in  *Strickland v. Washington*, 466 U.S. at 668, which the state trial court cited and applied.  In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice.  *Strickland*, 466 U.S. at 697.  The Supreme Court first held that "the

---

[49]St. Rec. Vol. 6 of 7, Trial Court Order, 5/18/05.

defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). The same standards apply to review of a claim of ineffective assistance of appellate counsel. *Blankenship v. Johnson*, 118 F.3d 312, 318 (5th Cir. 1997).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under *Strickland* 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting *Strickland*, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-

37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

This court must, therefore, apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 690, "because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999), *cert. denied*, 528 U.S. 1013 (1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Moore*, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. *Id*.

A.    TRIAL COUNSEL FAILED TO PROPERLY ARGUE SEVERANCE OF THE CHARGES

Roca argues that his trial counsel failed to properly argue for severance of the charges on the grounds that the State improperly joined a capital offense with non-capital offenses. Roca argues that, under Louisiana law, these offenses could not be tried by the same mode of trial and that the capital offense of aggravated rape required a unanimous verdict and other protections afforded to capital offenses.

The State argues that aggravated rape was not a capital crime because La. Rev. Stat. Ann. § 14:42 was amended by La. Acts 1977, 343, § 1, to provide that it would be punished by life imprisonment without benefit of parole, probation or suspension of sentence. The State concludes that Roca's claim should be denied because he was not indicted on a capital offense. In addition, the State argues that counsel would have been remiss to argue that his client should be subjected to the death penalty and that counsel's choice of arguments in support of the motion to quash was within his discretion.

On May 3, 2001, Roca was charged with violation of La. Rev. Stat. Ann. § 14:42 for the aggravate rape of his daughter, D.R., between January 1, 1977, and January 1, 1982. In the beginning months of 1977, La. Rev. Stat. Ann. § 14:42 defined aggravated rape and provided that the crime be punishable by death. *State v. Crochet*, 354 So.2d 1288 (La. 1977). The statute was amended, effective September 9, 1977, to provide: "Whoever commits the crime of aggravated rape shall be punished by life imprisonment without benefit of parole, probation or suspension of sentence." La. Acts 1977, No. 343, § 1.

In *State v. Rich*, 368 So.2d 1083 (La. 1979), cited by Roca, the Louisiana Supreme Court considered the impact of the 1977 amendment on an aggravate rape charged prior to the effective date of the amendment. In doing so, the Court reasoned as follows:

> At that time the statute under which [Rich] was later charged, R.S. 14:42, provided that rape, deemed to have been committed without lawful consent because of the presence of certain enumerated circumstances, was aggravated rape and punishable by death. The penalty prescribed, death, rendered the crime of aggravated rape a "capital offense" in the contemplation of the Code of Criminal Procedure. C.Cr.P. 933. R.S. 14:42 was amended by Act 343 of 1977, a law which took effect on September 9, 1977 and provided

a new penalty, one other than death.  Nonetheless, on the date of the offense, August 31, 1977, aggravated rape was a capital crime in Louisiana.  Imposition of the death penalty, however, was not legally available in Louisiana because on July 6, 1976 the United States Supreme Court decided *Selman v. Louisiana*, 428 U.S. 906, 96 S.Ct. 3214, 49 L. Ed.2d 1212 (1976), which declared that the imposition and enforcement of the death penalty in aggravated rape cases under the statute at issue in this case constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  Furthermore, several months before commission of the crime at issue the United States Supreme Court had rendered its decision in *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L. Ed.2d 982 (1977), in which the death penalty for aggravated rape cases was found to be unconstitutional per se; accordingly, persons prosecuted for aggravated rape in this country could no longer receive the death penalty. Therefore, at the time of the offense in question aggravated rape by state law was a capital crime, yet defendant could not be exposed to the death penalty. The trial judge was thus required to make threshold procedural decisions in connection with the trial of the case.

In analogous situations this court has repeatedly declared that, notwithstanding abolition of the death penalty, upon prosecutions of crimes for which the legislature had prescribed the death penalty, those offenses retained their classifications as capital for the purpose of deciding which procedural rules are applicable . . . The foregoing demonstrates that the jurisprudence has been consistent and clearly requires that the trial of a case such as the present one, an aggravated rape committed on August 31, 1977 (at which time the state statute categorized the crime as capital but execution was impermissible because of *Selman* and *Coker*), conform procedurally to the requirements applicable to a "capital" prosecution.

Roca argues that this holding required that his counsel move to sever the "capital" aggravated rape charge from the other counts related to E.B. to protect the procedural rights fundamental to a capital case.  Under the *Rich* case, these would include a sequestered jury and a unanimous verdict, not required for a non-capital offense.

However, shortly after *Rich*, the Louisiana Supreme Court revisited these procedural ramifications in *State v. Polk*, 376 So.2d 151 (La. 1979), as it applied to bail for "capital offenses" that had not yet been reclassified by the legislature after the death penalty for the

29

crime was invalidated.  After quoting *Rich*, 368 So.2d at 1084, for the proposition that "those offenses retained their classifications as capital for purpose of deciding which procedural rules are applicable," the Court went on to hold:

> Nevertheless, these decisions essentially represented merely <u>interim regulation of offenses</u> legislatively classified as capital, pending the legislature's re-evaluation of the classification following judicial invalidation of the penalty.  As we noted in [*State v. Holmes*, 269 So.2d 207, 209 (La. 1972)], our holding as to procedural administration in this manner of these legislatively-classified capital crimes was made "At least until the legislative process has reorganized the criminal law and procedure in view of" the judicial invalidation of the death penalty.

(emphasis added) *Polk*, 376 So.2d at 151.

In *State v. Schrader*, 518 So.2d 1024 (La. 1988), the Louisiana Supreme Court considered the issue again with respect to a claim of an un-sequestered jury in a manslaughter trial.  The court noted that "this homicide prosecution retained for procedural purposes its 'capital' classification" even though the "defendant could not have been sentenced to death due to the constitutional infirmities of the statutes in place at the time of the homicide." (citations omitted) *Schrader*, 518 So.2d at 1036.  Citing *Rich*, the court resolved that the defendant was entitled to the protections afforded the accused in a capital case.  *Id*.

However, the court went on to address the "interim nature" of the *Rich* protections. The court held that where the case was not truly a capital case, there should be no presumption of prejudice from the failure to assure the "capital" procedural requirements, such as a sequestered jury: "We now hold, despite its long lineage, the jurisprudential

presumption of prejudice for 'capital cases' does not apply to a 'capital case' where the defendant never faced the prospect of the death penalty. . ." *Id.*

Such is the case for Roca. Although aggravated rape was a capital offense for less than nine months of the six years encompassed in the indictment, Roca never actually faced the death penalty. As noted above, in 1977, years before his indictment, the penalty for aggravated rape was amended by the Louisiana legislature to life imprisonment after the United States Supreme Court found the death penalty for that crime to be unconstitutional.

Considering the foregoing progression of Louisiana law following *Rich*, Roca's counsel had no basis to challenge the indictment on the grounds that the aggravated rape charge enjoyed capital procedural protections and should not have been joined with other non-capital offenses.[50] The crime had long-since been re-characterized as non-capital and Roca never faced the death penalty. Roca no longer was entitled to the interim protections discussed under *Rich* and its progeny. There was no legal basis for counsel to argue that he was.

---

[50]To the extent Roca suggests that counsel erred in allowing the application of the amended statute, from death to life imprisonment, which was a violation of the *Ex Post Facto* Clause, his claim is without merit. The amendment enured to Roca's benefit by providing a sentencing option other than death and did not make Roca's punishment more burdensome. *See Weaver v. Graham*, 450 U.S. 24, 29 (1981) (for a criminal or penal law to be considered as applied *ex post facto*, it "must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."); *Collins v. Youngblood*, 497 U.S. 37 (1990) ( the *Ex Post Facto* Clause's prohibition extends only to a statute which "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed."). As the State noted, counsel would have been remiss to push for the death penalty to be applied to his client.

Roca has failed to demonstrate that counsel's actions were either deficient or prejudicial under *Strickland*. The state courts' denial of relief was not contrary to, or an unreasonable application of, federal law. Roca is not entitled to relief on this claim.

B.   <u>TRIAL COUNSEL FAILED TO CHALLENGE SUFFICIENCY OF EVIDENCE LEADING TO INDICTMENT</u>

Roca alleges that his counsel was ineffective for failing to challenge the sufficiency of the evidence brought to the grand jury. Specifically, Roca contends that the State failed to establish before the grand jury that there was a weapon present during the rapes of D.R. He further suggests that counsel should have obtained copies of the grand jury transcripts to place on the record that the indictment was not supported by evidence, to argue that the testimony before the grand jury constituted *Brady* material, and to search for prosecutorial misconduct during the grand jury hearings. Roca also alleges that the indictment is not a true bill from the grand jury and is instead signed only by an assistance district attorney. He further claims that the record fails to reflect that the indictment was brought by a quorum of a properly constituted grand jury.

The State argues that Roca's claim is without merit because Louisiana law does not provide for his counsel to have quashed the indictment based on the evidence presented to the grand jury.

The record contains a copy of the indictment brought in the name of the Jefferson Parish grand jury and signed by Assistant District Attorney David Wolff, who prosecuted the

case.[51]  The record also contains a copy of the Partial Return of the Grand Jury dated May 3, 2001, where 11 of 12 grand jurors were present.[52]  The grand jury foreperson reported under oath that the four count indictment had been filed against Roca.  The document also bears the following order:

> IT IS ORDERED BY THE COURT, THAT THE FINDINGS OF THE GRAND JURY OF THIS PARTIAL RETURN BE FILED WITH THE CLERK OF COURT AND THE ACCUSED FOR WHOM A TRUE BILL WAS FOUND BE BROUGHT INTO COURT TO BE ARRAIGNED.

Contrary to Roca's claims, the record does contain an indication that a quorum[53] of the Jefferson Parish grand jury returned an indictment against him that was described as a true bill by the court.  Roca has not alleged any error on the part of counsel for not challenging the indictment return or its filing.

Roca also argues that the evidence could not have been sufficient to convince the jury that the rape(s) of D.R. were aggravated by the presence of a weapon.  He urges that his counsel should have requested the transcripts to delve into the grand jury proceedings and challenge the evidence used to support the indictment.

As argued by the State, La. Code Crim. P. art. 442 provides that the grand jury is under no obligation the consider evidence from the defendant.  It also dictates that "no

---

[51]St. Rec. Vol. 1 of 7, Indictment, 5/3/01.

[52]St. Rec. Vol. 1 of 7, Grand Jury Return, 5/3/01.

[53]Louisiana law requires that not less than nine of the twelve grand jurors must concur in the bringing of the indictment.  La. Code Cr. P. art. 383; see also, La. Code Crim. P. art. 413 (the grand jury shall consist of twelve persons plus first and second alternates).

indictment shall be quashed or conviction reversed on the ground that the indictment was based, in whole or in part, on illegal evidence, or on the ground that the grand jury has violated a provision of this article." Furthermore, a challenge to the evidence presented to the grand jury is not a statutorily recognized basis for the filing of a motion to quash. *See* La. Code Crim. P. arts. 532, 533.[54]

------

[54]La. Code Crim. P. art. 532 provides as follows (footnote omitted):

A motion to quash may be based on one or more of the following grounds:

(1) The indictment fails to charge an offense which is punishable under a valid statute.

(2) The indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. In such case the court may permit the district attorney to amend the indictment to correct the defect.

(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.

(4) The district attorney failed to furnish a sufficient bill of particulars when ordered to do so by the court. In such case the court may overrule the motion if a sufficient bill of particulars is furnished within the delay fixed by the court.

(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.

(6) Trial for the offense charged would constitute double jeopardy.

(7) The time limitation for the institution of prosecution or for the commencement of trial has expired.

(8) The court has no jurisdiction of the offense charged.

(9) The general venire or the petit jury venire was improperly drawn, selected, or constituted.

La. Code Crim. P. art. 533 provides as follows:

A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:

(1) The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.

(2) An individual grand juror was not qualified under Article 401.

(3) A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.

(4) Less than nine grand jurors were present when the indictment was found.

(5) The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

Louisiana law does not permit a defendant to challenge the evidence presented to the grand jury in returning the indictment. *State v. Walker*, 567 So.2d 581 (La. 1990). Roca suggests that his trial counsel should have done that which Louisiana law does not allow. Counsel's failure to raise a frivolous or baseless objection is not deficient performance below an objective level of reasonableness. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir.1998).

Roca has failed to demonstrate that counsel's actions were either deficient or prejudicial under *Strickland*. The state courts' denial of relief was not contrary to, or an unreasonable application of, federal law. Roca is not entitled to relief on this claim.

### C.      TRIAL COUNSEL FAILED TO REQUEST A DAUBERT HEARING

Roca argues that his counsel gave ineffective assistance when he failed to request a *Daubert* hearing concerning the testimony about Child Sexual Abuse Accommodation Syndrome ("CSAAS") given by the State's expert, Dr. Scott Benson. He alleges that the State failed to qualify Dr. Benson as an expert in CSAAS and the victims in his case had not been diagnosed with CSAAS or any other psychological or medical condition. He argues that the testimony was therefore inadmissable under state law. The State contends that the claim is without merit and counsel's trial decisions were not outside the range of professionally competent assistance.

The Louisiana Supreme Court defined CSAAS in *State v. Foret*, 628 So.2d 1116, 1124 (La. 1993) as follows:

> Child Sexual Abuse Accommodation Syndrome ("CSAAS") is a psychological phenomenon prevalent amongst victims of child sexual abuse. It was posited by Dr. Roland C. Summit in the late 1970s and early 1980s, and was a listing

of the factors that were "both most characteristic of child sexual abuse and most provocative of rejection in the prevailing adult methodology about legitimate victims." Summit, "Abuse of the Child Sexual Abuse Accommodation Syndrome", 1 Journal of Child Sexual Abuse 153, 154 (1992). The factors were listed so as to both describe "the luxury of the adult world not to listen and the accommodating efforts of the child not to complain." Id. The principal factors (or "dynamics") include secrecy, helplessness, entrapment and accommodation, delayed/conflicted/ and/or unconvincing disclosure, and retraction. *Id.* The stated purpose in the dissemination of information relating to this "syndrome" was to create a "common language" for treaters of abused children. Summit, "The Child Sexual Abuse Accommodation Syndrome", 7 Child Abuse & Neglect 177, 191 (1983).

The *Foret* court determined that evidence concerning CSAAS "is of highly questionable scientific validity, and fails to unequivocally pass the *Daubert* threshold test of scientific reliability." *Id.*, at 1127. The test referred to by the court was that set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court replaced the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" ensuring the relevance and reliability of scientific expert testimony. *Id.*

In *Foret*, the Louisiana Supreme Court, assuming that CSAAS-based testimony passed the *Daubert* test, went on to determine whether the use of CSAAS-based testimony to bolster the victim's credibility was improper. The court determined that CSAAS-based testimony as determinant of a victim's credibility is not admissible; however, the court conceded the testimony could be admitted for very limited purposes. The court resolved that a proper presentation of the testimony would focus on explaining to a jury why, superficially, unusual reactions, such as delayed reporting, take place. The court resolved that the opinion

36

testimony should demonstrate or explain in general terms the behavioral characteristics of child abuse victims in disclosing alleged incidents, without giving testimony that directly concerns the particular victim's credibility. *Foret*, 628 So.2d at 1129-30.

Dr. Scott Benson was presented as an expert in the fields of forensic pediatrics and general pediatrics by stipulation of counsel.[55]  Dr. Benson testified with regard to his seven years of experience in the examination and treatment of child abuse victims.[56] He also provided statistical information about the frequency of familial sexual abuse occurrences and impact on it has on victims.[57]

The prosecutor asked the doctor the procedures he uses and what he looks for when examining a victim.[58]  The doctor mentioned that, unless the child presents within 72 hours of the incident, it is difficult to obtain physical evidence and most children under age 12 do not present within that time period.[59]  In explaining the reasons why this is true of children under the age 12, Dr. Benson stated:[60]

> There's many.  It begins at the most basic level of they learn what is wrong and right from their family and under age 12 the most common form of sexual assault is what we call intra-familiar sexual assault meaning that someone in the family that is doing the sexual abuse.  And the child can learn

---

[55]St. Rec. Vol.  2 of 7, Trial Transcript, p. 86, 7/10/02.

[56]*Id*., pp. 86-87.

[57]*Id*., pp. 87-99.

[58]*Id*., pp. 88, *et seq.*

[59]*Id*., pp. 88-89, 90-91.

[60]*Id*., pp. 92-93.

from their environment that they believe that this is normal.  This is just something that happens in everybody else's family so if they don't know it's abnormal, they have nothing to report.  So, that's the first reasons.

The second is is [sic] that sexual abuse of children at this age is usually a subduction [sic].  It's a long process of getting them to do this type of activity and then increasing that type of activity eventually in some cases leading to rape or vaginal or anal or oral penetration by the penis or other forms of sexual touching.  And that long period of time is accompanied with various things of indoctrination or grooming, if you will, about not disclosing, about this being our secret, about this is our game, about if you tell, X will happen.  So, the next level of things are it's either that they become participants, which I know that may sound distributing [sic] to some of you, but they actually participate in the activities because of this seduction or psychological seduction or they are kept in this activity and silent through threats or intimidation by an authority figure and that's the next level of things.  The child is looking to authority figures to tell bad things that happen.  Well, who does the child tell if that authority figure, which in child sex abuse tends to often than not to be an authority figure is the person doing the abuse.  In psychological terms we call that a trust-mistrust thing.  They no longer trust anybody so they don't tell anybody and the most common disclosure are to people who can't do anything like their friends or their peer group, so they might be telling someone but it's not someone who can do anything that helps them.  And that's the typical dynamics of children under age 12 and the reason why we frequently don't see immediate disclosure after things happen.

Dr. Benson also later testified that in adolescent age children, embarrassment is listed in many studies as the number one reasons for longer disclosure periods leading to a lack of evidence upon examination.[61]

A reading of the record reflects that Dr. Benson never mentioned CSAAS specifically during his testimony.  He also did not offer the testimony regarding the seduction or grooming of younger children except to explain why children do not usually report for an examination within the preferred 72 hours.  To the extent Dr. Benson mentioned factors

_____

[61]*Id.*, p. 95.

similar to CSAAS, like "secrecy, helplessness, entrapment and accommodation, delayed/conflicted/ and/or unconvincing disclosure, and retraction," *Foret*, 628 So.2d at 1124, it was not done in violation of the *Foret* prohibitions.

Dr. Benson's testimony was given to assist the trier of fact in understanding the reasons for delayed disclosure of by child sex abuse victims and in an effort to explain why it is difficult to have concrete medical evidence to confirm sexual abuse. Dr. Benson did not give an opinion on either of the victims' credibility or posit any reasons why either of the victims delayed their disclosure of the long-term abuse by Roca.

For this reason, Dr. Benson's testimony did not violate Louisiana law or give cause for Roca's counsel to challenge his testimony under *Daubert* or under Louisiana evidence rules. Roca has not demonstrated that counsel's performance was deficient or prejudicial in that regard.

The state courts' denial of relief was not contrary to, or an unreasonable application of, federal law. Roca is not entitled to relief on this claim.

D.    TRIAL COUNSEL FAILED TO OBJECT TO PROSECUTORIAL MISCONDUCT

Roca references several places where his counsel allowed the prosecutor to question E.B. in a leading and prejudicial manner without objection. Roca also argues that his counsel failed to object to the State's alleged failure to comply with state law in the taking and supervision of E.B.'s statements to Detective Dyess. He further contends that counsel should have objected to the prosecutor's efforts to portray as sinister the use of his full Spanish

surname.  Roca also complains that the prosecutor tried to get him to call D.R. a liar and continually referred to him as the "perpetrator."  He argues that his counsel failed to investigate and challenge any of this misconduct by the prosecutor.[62]

The State argues that counsel's performance at trial was not outside of the range of competent assistance.  As indicated by the state trial court when this claim was denied, Roca challenges the strategic decisions of his trial counsel, something that would not entitle him to relief under *Strickland*.

Roca, for example, challenges his counsel's failure to object to the leading nature of the prosecutor's questions to E.B. and D.R. when discussing the rapes and the emotional upset caused by the rapes and by the proceedings themselves.  He suggests that defense counsel should have objected because of the prejudicial nature of the testimony elicited from the victims, which he believes was designed to touch the emotions and sympathies of the jury.

This trial concerned repeated sexual abuse by the father and father-figure of the two victims.  It was by its very nature emotional, not because of the prosecutor, but because of the nature of the crimes.  Furthermore, the defense presented by Roca was one of innocence.

---

[62]He also takes issue with the fact that the prosecutor played a role in the pre-indictment investigation of the case which should have been grounds for his recusal.  Roca does not suggest that his counsel should have done anything about this.  Instead, he seems to boot-strap this unrelated allegation of prosecutorial misconduct to the ineffective assistance of counsel claim presently before this Court.  Nevertheless, the investigatory authority of the district attorney is subsumed under his power to take charge of every criminal prosecution in his district and to represent the state before the grand jury and act as legal advisor to the grand jury.  *Plaquemines Parish Commission Council v. Perez*, 379 So.2d 1373 (La. 1980) (citing La. Const. Art. 5, § 26(B); La. Rev. Stat. Ann. § 16:1; and La. Code Crim. P. art. 61).  Thus, there was no basis for counsel to object to the district attorney's participation in the initial criminal investigation.

A reading of the transcript reflects that the focus of defense counsel's questions was to establish that the victims were coached to lie about the incidents because of family matters and/or their mothers' upset with Roca.[63]  By allowing the State to lead the witnesses, defense counsel was able to use this theory to his advantage, i.e., to argue that words were being put in the mouths of the victims.  Had defense counsel objected to the leading nature of the questions, he may have invoked more sympathy for the victims and hampered his ability to argue that the victims were coached.  Roca has not established that counsel's failure to repeatedly object to leading questions was outside of the range of sound trial strategy based on the defense posited.

Roca also argues that his counsel should have objected to the manner in which E.B.'s pretrial statements were taken, specifically that there was no showing that her mother authorized the interviews.  At the preliminary hearing held April 12, 2001, counsel had the opportunity to question Detective Larry Dyess extensively about the statements taken from E.B., including the video taped statement taken in California.  A review of that transcript reflects that counsel was detailed in his questioning, demonstrating a thorough familiarity with the statements.  The record would indicate that counsel must have determined that he had no cause to question the parental authorization, especially in light of the fact that the mother, C.B., was the person who caused the authorities to be notified about the sexual abuse.  Furthermore, the trial transcript is replete with questions from counsel designed to

_____

[63]*See e.g.*, St. Rec. Vol. 3 of 7, Trial Transcript (continued), pp. 229, 244, 7/10/02.

challenge the veracity of the statements made by the child.   Roca has not shown that counsel

acted outside the range of competent and effective representation with respect to this claim.

In the remaining points, Roca asserts that counsel should have objected to certain

tactics by the prosecutor which he suggests were inappropriately designed to paint him in a

bad light before the jury.  It is a fundamental premise that the prosecution is allowed to attack

the credibility of a defendant who chooses to testify.  Furthermore, in the specific instances

referenced by Roca, there was no apparent basis for counsel to object.

The prosecutor posed questions to Roca which were aimed at clarifying his criminal

history under the name Roca-Balari, challenging his claim of innocence, and challenging his

character once he took the stand.  Roca testified on direct that he had no criminal record.[64]

Roca also testified repeatedly that nothing happened between him and either of the victims

and that nothing they said was true.[65]  Roca even used the word "fabrication" to describe

D.R.'s accusations.[66]   On cross-examination, the prosecutor asked Roca if, by these

statements, he meant that the victims were lying.[67]

Roca seems to allege that his counsel should have challenged this question as seeking

his opinion about whether the victims were lying.  Roca urges a distinction without a

difference.  Roca testified that the nothing the victims said was true, which by definition

[64]St. Rec. Vol. 3 of 7, Trial Transcript (continued), p. 242, 7/10/02.

[65]*Id.*, p. 213 ls.19, p. 219 ls.19-20, p. 220 ls.13-16, 23-24,  p.226 ls.22-29, p.227 l.25, p. 229 l.15, p. 237 ls.21-30, p. 242-43, 7/10/02.

[66]*Id.*, p. 226 ls.27, 29.

[67]St. Rec. Vol. 4 of 7, Trial Transcript, p. 72-73, 7/11/02.

means they lied.  There is no apparent basis for counsel to have objected when Roca himself testified that the allegations of sex abuse were not true.

The prosecutor also questioned Roca about his prior deportations, problems with the immigration service, and numerous marriages.[68]  The prosecutor established that Roca had not always been identified simply as Cesar Roca, Sr.  Prior to his attaining citizenship, Roca used another name, his "Spanish" surname, which was Roca-Bolari.[69]  Roca did not deny that to be true.  In fact, his counsel attempted to clarify the entire name change and deportation issue on re-direct.[70]  Counsel's failure to object to the questioning was not prejudicial since he was later able to attempt witness rehabilitation on the issue.

Roca's last complaint is that the prosecution asked E.B. if she believed in God and knew whether God wanted people to lie or tell the truth.[71]  He claims that this violated La. Code Ev. art. 610, which prevents credibility from being based on religious convictions, and his counsel failed to object.  Roca fails to recognize, however, that the question posed to E.B., a minor, was designed to assess her competence to testify, her understanding of right and wrong, truth from lie.  It was not used to enhance her credibility but to demonstrate her capacity to testify, which is allowed pursuant to La. Code Ev. art. 613.  There appears no

---

[68]St. Rec. Vol. 3 of 7, Trial Transcript (continued), pp. 246-251, 7/10/02.

[69]St. Rec. Vol. 4 of 7, Trial Transcript, p. 5-6, 7/11/02.

[70]*Id.*, p. 94-99.

[71]St. Rec. Vol. 2 of 7, Trial Transcript, p. 8, 7/10/02.

legal basis for his counsel to have objected.  The court also notes that Roca and his counsel

invoked the name of God during Roca's testimony without objection from the prosecution:

> Q:    Cesar, I think you've talked a long time and you have a lot more talking
>        to do, but I want to ask you one final question.  In front of the flag and
>        this country that you've worked so hard to come to - -
> A:    Yes, sir.
> Q:    - - and stay here and before God are you guilty of these charges that
>        have been - -
> A:    I am innocent of this and I have a pledge before God and I swear I did
>        not commit anything against my daughter or [E.B.].

State Record Volume 3 of 7, Trial Transcript (continued), page 246, lines 3-13, July 10,

2002.

Roca has failed to demonstrate any prosecutorial misconduct or basis for his counsel

to have objected to the questions and evidence presented by the prosecution.  Denial of relief

on this claim was not contrary to, or an unreasonable application of, *Strickland*.  Roca is not

entitled to relief on this claim.

### E.    TRIAL COUNSEL FAILED TO OBJECT TO UNSWORN JURY

Roca alleges that his counsel erred when he failed to object to the fact that the jury

was not sworn before trial, an issue discovered by the Louisiana Fifth Circuit on direct

appeal.  The State argues that the appellate court did not find that the jury was not sworn and

Roca has failed to establish a basis for his counsel to have entered an objection.

In its errors patent review, the Louisiana Fifth Circuit determined that "neither the

record nor any minute entry indicates that the jury was sworn as required by La. C.Cr.P. arts.

788 and 790."  The court did not make a finding that, in fact, the jury was not sworn.

44

Instead, the court only referenced its finding that the record did not indicate that the jury was sworn.

As noted by the State, the jury selection is not part of the trial transcript.  The minutes from the first day of trial do not reflect that any objections were lodged during the jury voir dire.  As such, the voir dire transcript was not made a part of the appellate record.

Nevertheless, Roca has not presented anything to this court which would indicate that the jury was not actually sworn.  Counsel would have had no need to challenge the mere failure to mention the swearing in a minute entry.  Roca has not established a violation of the *Strickland* standards.  Denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law.

F.    TRIAL COUNSEL FAILED TO CHALLENGE SUFFICIENCY OF THE EVIDENCE

In his final challenge to the performance of his trial counsel, Roca claims that his counsel failed to challenge the sufficiency of the evidence presented at trial through "motion for a 'directed verdict of not guilty'" or a "Motion for Post-Conviction Acquittal."[72]  The State contends that Louisiana law does not provide or recognize motions so designated and counsel did not err in failing to raise legally baseless motions.

Roca argues to this court that there was a "total lack of physical evidence" and "lack of the medical exam to find any positive signs of abuse" and " a record not absent a reasonable hypothesis of innocence" should have been challenged pursuant to La. Code

---

[72]Rec. Doc. No. 1, Memorandum in Support, p. 37.

Crim. P. art. 821.[73]   Article 821 allows a defendant to move for a post verdict judgment of acquittal before sentencing.   The statute provides that the motion "shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty."   La. Code Crim. P. art. 821(B).

The Louisiana courts have resolved that motions under Article 821 call for the court to utilize the strict standard of review for determining legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979).   *State v. Korman*, 439 So.2d 1099, 1101 (La. App. 1st Cir. 1983).   Under *Jackson*, the court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.   *Jackson*, 443 U.S. at 319; *Korman*, 439 So.2d at 1101.   This standard presumes favor to the prosecution in resolving the sufficiency of the evidence.

In this case, Roca's counsel chose instead to file a motion for new trial pursuant to La. Code Crim. P. art. 851, in which he alleged, *inter alia*, that the verdict was contrary to the law and evidence.[74]   A motion for new trial allows the trial court to consider the weight of the evidence, and "in so determining the trial judge makes a factual review as a thirteenth juror."   *Korman*, 439 So.2d 1101.   Under Article 851, the trial court actually can re-weigh the evidence rather than being bound by the reasonableness of the jury's verdict under Article 821.   *Id*.   This is exactly what Roca contends counsel should have asked the trial court to do.

---

[73]*Id.*

[74]St. Rec. Vol. 1 of 7, Motion for New Trial, 8/6/02.

Thus, counsel's filing of the motion for new trial was the appropriate method of achieving what Roca asks for, that is, a re-evaluation of the evidence presented which, he contends, did not support the verdict.

Counsel did not perform deficiently or prejudicially under *Strickland* in failing to pursue a motion under La. Code Crim. P. art. 821. The state court's denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law.

### G.   APPELLATE COUNSEL FAILED TO PROVIDE ROCA WITH A COMPLETE TRIAL TRANSCRIPT

Roca alleges that his appellate counsel gave ineffective assistance when he failed to provide Roca with a complete copy of the trial record for his use in seeking post-conviction relief. Roca claims, for example, that he did not have the portion of the transcript where the trial court ordered that he be sequestered from his counsel when the court broke for the evening in the middle of his cross-examination by the prosecutor.

The Due Process and Equal Protection Clauses of the Fourteenth Amendment require that States provide indigent defendants with a trial transcript free of charge when it is necessary for meaningful appellate review. *Griffin v. Illinois*, 351 U.S. 12, 19-20 (1956). The State, however, is not "obligated to automatically supply a complete verbatim transcript." *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir.1980). A State is not required to waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal." *Draper v. Washington*, 372 U.S. 487, 495 (1963).

In this case, the record contains, and Roca's appointed appellate counsel was provided with, transcripts of every pretrial hearing and the relevant portions of the trial necessary for appellate review. Roca now suggests that his appointed counsel was supposed to provide him with a complete transcript so that he could examine it to pursue post-conviction relief.

Roca has presented nothing to this Court under federal or state law that would indicate that his appointed counsel had an obligation to send him copies of the transcripts. Roca also has not indicated any effort on his part to obtain additional portions of the record from the State. Nevertheless, it is well settled that the State is not required to furnish free and complete transcripts "so that the defendants ... may conduct 'fishing expeditions' to seek out possible errors at trial." *Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 1983) (quoting *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir.1982)).

Roca, therefore, has failed to establish that his appellate counsel acted in a deficient manner or in anyway prejudiced him in violation of *Strickland*. The denial of relief by the state courts was not contrary to, or an unreasonable application of, Supreme Court law. Roca is not entitled to relief on this claim.

### H.    APPELLATE COUNSEL FAILED TO RAISE ISSUE OF UNSWORN JURY

Roca argues that appellate counsel was ineffective in failing to raise the issue that the jury was not sworn, the issue discussed in the Louisiana Fifth Circuit's errors patent review. For the reasons discussed with respect to this same claim urged against his trial counsel, Roca has failed to establish that the jury was not sworn such to have required counsel to raise this issue on appeal.

Roca has failed to establish that his appellate counsel acted in a deficient manner or in anyway prejudiced him in violation of *Strickland*. The denial of relief by the state courts was not contrary to, or an unreasonable application of, Supreme Court law. Roca is not entitled to relief on this claim.

I.   APPELLATE COUNSEL FAILED TO RAISE OBJECTIONS MADE AT TRIAL

Roca alleges that appellate counsel should have raised on appeal two objections made by his counsel during trial. The State argues that appellate counsel had the professional skills and discretion to determine which non-frivolous grounds to raise on appeal.

In the first instance questioned by Roca, during the direct examination of Gisela Chevalier, Roca's daughter, the prosecutor asked her if she had heard anything involving D.R. before she came to the United States from Cuba.[75] Chevalier began to answer "[t]o tell you the truth, I heard rumors - -," and Roca's counsel immediately objected on the basis of hearsay.[76] The Court overruled the objection on the prosecutor's representation that he was looking for general information not specifically what was told to her. Counsel objected again to no avail when the question was reposed.[77] Chevalier went on to testify that she heard rumors, which were later confirmed by Roca, that he had a sexual relationship with D.R.

---

[75]St. Rec. Vol. 2 of 7, Trial Transcript, p. 49, 7/10/02.

[76]*Id.*

[77]*Id.*, p. 50.

Although the objection was overruled by the trial court, Roca has not shown how raising the hearsay issue on appeal would have changed anything or benefitted his appeal. At trial, the jury also heard defense counsel's cross-examination of Chevalier and his efforts to discredit her statements about these rumors. Roca also was able to testify to deny having made any statements to family or to Chevalier about having a sexual relationship with D.R. At that point, it became a credibility issue for the jury to resolve.

Furthermore, the mere fact that trial counsel made the objection does not require appellate counsel to raise the issue on appeal. *Evits v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Roca has not established any prejudice resulting from counsel's failure to re-urge this objection on appeal. *Penson v. Ohio*, 488 U.S. 91, 88 (1988) (where appellate counsel fails to raise an issue, prejudice under *Strickland* must be shown).

In the second instance, Roca references an exchange during his cross-examination by the prosecutor where they were discussing why C.B. would want to make up the allegations about his abuse of E.B.:[78]

> A.    Listen. [C.B.] want to marry me, okay, and I refuse several times.
> Q.    What a catch.
> A.    Huh?
> Q.    What a catch.

---

[78]St. Rec. Vol. 4 of 5, Trial Transcript, p. 51, 7/11/02.

Roca's counsel entered an objection on the basis that the prosecutor was being argumentative. The state trial court sustained the objection. Thus, there was nothing for appellate counsel to raise on appeal.

Roca has failed to establish that his appellate counsel acted in a deficient manner or in anyway prejudiced him in violation of *Strickland*. The denial of relief by the state courts was not contrary to, or an unreasonable application of, Supreme Court law. Roca is not entitled to relief on this claim.

J.      APPELLATE COUNSEL FAILED TO RAISE PROSECUTORIAL MISCONDUCT

In this claim, Roca alleges that appellate counsel should have challenged the same instances of prosecutorial misconduct to which he referred in his earlier claim with respect to his trial counsel's failure to object. (*See* § VII(D), pages 39-44 of this Report). For the reasons outlined in this Court's review of that claim, Roca has not established that any prosecutorial misconduct occurred to which his trial counsel should have objected, or which should have been raised on appeal by his appellate counsel.

For the reasons already assigned, Roca has failed to establish deficient performance or any prejudice arising from appellate counsel's failure to question the conduct of the prosecutor at trial. The denial of relief by the state courts was not contrary to, or an unreasonable application of, Supreme Court law. Roca is not entitled to relief on this claim.

K.     APPELLATE COUNSEL FAILED TO CHALLENGE SUFFICIENCY OF
THE EVIDENCE AND TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE

In his final claim, Roca alleges that appellate counsel should have challenged on appeal the sufficiency of the evidence.  Roca argues that the lack of physical evidence and medical evidence, coupled with the evidence that the complaints were contrived, was sufficient to show that the State had not met its burden of overcoming any reasonable hypothesis of innocence.  He further suggests that his trial counsel's failure to adequately investigate and challenge the states evidence also led to the guilty verdict.  He claims that appellate counsel should have argued these matters to the appellate court.

As outlined above, the second issue raised by appellate counsel on direct appeal was insufficient evidence to support the verdict.  The Louisiana Fifth Circuit summarized the claim raised as follows:[79]  "Defendant next contends there was insufficient evidence to conclusively show he raped or sexually assaulted D.R. or E.B.  Defendant further argues there were no eyewitnesses to corroborate the victims' stories and the only testimony the State used to support the allegations came from individuals who wish to punish him."  Appellate counsel in fact raised the claim and arguments which Roca wanted to be heard by the appellate court.

With respect to Roca's claim that appellate counsel should have raised the issue of ineffective assistance of trial counsel, under Louisiana law, such a claim is normally not considered on direct appeal and is left to post-conviction review.  The Louisiana courts have

---

[79]*State v. Roca*, 866 So.2d at 874; St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 03-KA-1076, p. 11, 1/13/04.

consistently held that the issue of ineffective assistance of trial counsel is a matter more properly raised in an application for post-conviction relief, which allows for an evidentiary hearing to be conducted on the issue if necessary.  *State v. Watson*, 817 So.2d 81 (La. 2002); *State v. Truitt*, 500 So.2d 355, 359 (La.1987).  The Louisiana courts consistently refuse to consider claims of ineffective assistance of trial counsel on direct appeal, deferring them instead to post-conviction review.  *State v. Smothers*, 836 So.2d 559 (La. App. 5th Cir. 2002); *State v. Hall*, 2003 WL 1546915 (La. App. 4th Cir. Mar. 19, 2003); *State v. Griffin*, 2003 WL 774029 (La. App. 3d Cir. Mar. 5, 2003).

Thus, appellate counsel was not outside of the range of competent and adequate performance in not raising that issue on appeal.  Roca also was not prejudiced in that regard since he was able to raise ineffective assistance of trial counsel in his application for post conviction review.

Roca has failed to establish deficient performance or any prejudice arising from appellate counsel's actions.  The denial of relief by the state courts was not contrary to, or an unreasonable application of, Supreme Court law.  Roca is not entitled to relief on this claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Cesar Mario Roca for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __16th__ day of December, 2008.

LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE

54